**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **THE MEDICAL CENTER OF** | : | |
| **CENTRAL GEORGIA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **5:03CV32 (DF)** |
| **vs.** | : | |
| | : | |
| **DENON DIGITAL EMPLOYEE** | : | |
| **BENEFIT PLAN; DENON** | : | |
| **DIGITAL, LLC; and J. SMITH** | : | |
| **LANIER & CO.** | : | |
| **ADMINISTRATORS, INC.,** | : | |
| | : | |
| **Defendants.** | : | |

## O R D E R

On May 23-24, 2005, the Court held a bench trial on Defendant J. Smith Lanier & Co. Administrators, Inc.'s ("JSLA") cross-claim for indemnification against Defendant Denon Digital, LLC ("Denon"). JSLA alleges in its cross-claim that it is contractually entitled to reimbursement from Denon for the attorney's fees and expenses it has incurred as a result of defending against Plaintiff's claims in this lawsuit. Having now heard the parties' evidence and considered their post-trial briefs, the Court finds in favor of JSLA and, for the reasons set forth below, hereby awards attorney's fees and expenses in the amount of $47,539.77.

## I.    FINDINGS OF FACT

The Court has entered two previous orders setting forth the facts underlying this lawsuit in some detail (tabs 72 & 76).  Only those facts pertinent to JSLA's cross-claim will be repeated here.

In 1996 Denon hired a North Carolina based company called Trigon, a subsidiary of Blue Cross/Blue Shield of Virginia, to provide third-party administrative services for its employee benefits plan ("the Plan").  Denon and Trigon entered into an Administrative Services Agreement ("ASA") setting forth their rights and obligations.  The ASA was drafted by Blue Cross/Blue Shield on behalf of Trigon.  It contained a section requiring Denon to indemnify Trigon under certain circumstances.

Three years later, in 1999, Denon and Trigon agreed to have Trigon transfer its Plan-administration responsibilities to a company called Quality Service Administrators, Inc. ("QSA"), a subsidiary of J. Smith Lanier & Co., Inc. ("JSL").  Like Trigon, QSA would function as a third-party administrator for the Plan.  However, before transferring its files to QSA, Trigon insisted that Denon and QSA execute a formal contract.  Michael Houser, president and CEO of QSA, copied the Trigon/Denon ASA to use as the new contract between Denon and QSA.  Houser

testified at trial that he made the appropriate name changes on the original ASA and, at Denon's request, attached an addendum listing the administrative fees applicable under the contract.  As far as anyone can remember no changes were made to the ASA's indemnification section.[1]  The ASA between Denon and QSA was executed in mid-November 1999.

In 2000 QSA changed its name to J. Smith Lanier & Co. Administrators, Inc. ("JSLA") to more accurately reflect its relationship to its parent company, JSL.  The name change had no effect on the parties' rights and obligations under the 1999 ASA.  Denon and JSLA continued to use the 1999 ASA at all times pertinent to this litigation; they have renewed it through the years and have made changes with respect to the administrative fees listed in the addendum.  Other than the fee adjustments, however, the substance of the ASA—including its indemnification section—has remained unchanged.

On January 22, 2003, Plaintiff Medical Center of Central Georgia ("MCCG") filed this action against Denon and JSLA to recover Plan benefits under the Employee Retirement Income Security Act ("ERISA").   MCCG's suit sought

---

[1] A copy of the original Trigon/Denon ASA was not retained and was, therefore, not presented at trial.

payment for medical services it rendered to the spouse of a Denon employee who was a covered beneficiary under the Plan.  MCCG made a claim for payment on both JSLA and Denon.  A portion of its claim was paid by the Plan, but a portion was denied as untimely filed; first by JSLA in its capacity as the Plan's third-party administrator, and then by Denon upon review of JSLA's denial.

In its complaint, MCCG alleged that JSLA breached its ERISA-imposed fiduciary obligations when it partially rejected MCCG's claim.  JSLA answered the complaint, denying that it functioned as a fiduciary under ERISA and asserting a cross-claim against Denon to recover attorney's fees and expenses under the ASA's indemnification section.  At the close of discovery, JSLA moved for summary judgment on MCCG's claim.  The Court granted JSLA's motion in July 2004.  JSLA subsequently filed a second summary-judgment motion on its cross-claim against Denon.  That motion was denied as untimely, and the cross-claim proceeded to trial.

JSL maintains a professional-liability insurance policy with St. Paul Fire & Marine Insurance Company ("St. Paul").  The policy, which provides coverage to all of JSL's subsidiaries, including JSLA, has a $100,000 deductible.  Upon receiving MCCG's complaint, JSLA forwarded it to St. Paul, who in turn assigned the law firm of Hall, Booth, Smith & Slover, P.C. to represent JSLA in the ensuing litigation.  The

4

attorney's fees and litigation expenses generated by Hall Booth were initially paid by St. Paul, on behalf of its insured, JSLA.  Because Hall Booth's fees and expenses totaled less than the policy's $100,000 deductible, JSL and JSLA were by contract jointly and severally liable for reimbursing St. Paul for all of the money it initially paid the law firm. In keeping with JSL's internal accounting procedures, JSL paid St. Paul and then charged those fees back to its subsidiary, JSLA, as an expense.  These charges, representing a liability to JSLA, were reflected on JSLA's profit and loss statement.  St. Paul was paid a total of $55,562.31—a figure representing some fees and expenses not attributable to the defense of MCCG's claim.  JSLA has proposed a reduction for the amount not related to the defense of MCCG's claim, and now seeks to recover from Denon a total of $48,491.71— 45,888.50 in fees and 2,603.21 in expenses.

## II.     CONCLUSIONS OF LAW

This case hinges on the meaning of the indemnification section of the ASA. The relevant portion provides as follows:

> The Plan Administrator [Denon] agrees to indemnify and hold harmless, the Administrative Service Agent [JSLA], and its employees, agents, officers, directors, and shareholders, from and against any claim, action, cause of action, liability, loss, cost, expense, fee, damage, tax or penalty (including reasonable attorney and accountant fees) which may be made or imposed by any employee or dependent or any other person or persons (including any governmental authority) resulting from, or in connection with, the operation of the Plan or any

action or inaction by the Administrative Services Agent, unless such claim, action, cause of action, liability, loss, cost, expense, fee, damage, tax or penalty results from the Administrative Service Agent's willful misconduct or fraud.

ASA § IV, tab 75, Ex. A-1.

In ruling on JSLA's cross-claim, the Court addresses two questions: (1) whether the foregoing provision obligates Denon to reimburse JSLA for the attorney's fees and expenses it incurred in defending against MCCG's claim, and (2) if so, whether the attorney's fees and expenses generated by Hall Booth are reasonable. As explained below, the Court answers yes to the first question and, with some adjustments, yes to the second.

### A.    Choice of Law

The ASA contains a choice-of-law provision stating: "This Agreement shall be construed and enforced in accordance with the laws of the State of North Carolina. . . ." ASA § VI: ¶ F, tab 75, Ex. A-1. The Court must first determine which state's law to apply—North Carolina's, as contemplated by the ASA; or Georgia's, as urged by Denon.

Because "parties by contract may stipulate that the laws of another jurisdiction will govern the transaction," ***Nationwide Logistics, Inc. v. Condor***

*Transp., Inc.*, 606 S.E.2d 319, 322 (Ga. Ct. App. 2004), courts in Georgia, "[a]bsent a contrary public policy, [ ] will normally enforce a contractual choice of law clause." *Carr v. Kupfer*, 296 S.E.2d 560, 562 (Ga. 1982); *see also Manderson & Assocs., Inc. v. Gore*, 389 S.E.2d 251, 254 (Ga. Ct. App. 1989).  Here, Denon and JSLA (through its predecessor in interest, Trigon) voluntarily chose to have North Carolina law govern their ASA.  Neither party has argued that applying this provision would be against public policy.[2]  Thus, the Court will give effect to the ASA's choice-of-law provision and interpret the contract under North Carolina law.

### B.   Contract Interpretation

"A court's primary purpose in interpreting a contract is to ascertain the intention of the parties."  *Glover v. First Union Nat. Bank*, 428 S.E.2d 206, 209 (N.C. Ct. App. 1993).  Recognizing that indemnification agreements are contracts, North Carolina courts interpret such agreements by applying the ordinary rules of contract

---

[2] Denon invokes the conflict-of-law principle *lex loci contractus* in arguing that Georgia law should control.  But that principle, a default of sorts, is inapplicable where a contract contains a choice-of-law provision whose enforcement is not contrary to public policy.  *See Pastor v. Union Central Life Ins. Co.*, 184 F. Supp. 2d 1301, 1304-05 (S.D. Fla. 2002) ("Under [*lex loci contractus*], absent a contractual choice of law provision, a contract is governed by the law of the state in which the contract was made."); *see also Sanders v. Doe*, 831 F. Supp. 886, 890 (S.D. Ga. 1993) (applying *lex loci contractus* to a contract that did not contain a choice-of-law provision); *Ferris v. Jennings*, 851 F. Supp. 418, 422 n.1 (M.D. Ala. 1993) ("The *lex loci contractus* rule does not apply where 'the parties intend the law of some other place to govern.'").  In any event, the outcome of this case would be the same under Georgia law.

construction.  *See Furr v. Fonville Morisey Realty, Inc.*, 503 S.E.2d 401, 408 (N.C. Ct. App. 1998).  "[T]he most fundamental principle of contract construction [is] that the courts must give effect to the plain and unambiguous language of a contract."  *American Nat. Elec. Corp. v. Poythress Commercial Contractors, Inc.*, 604 S.E.2d 315, 317 (N.C. Ct. App. 2004).

"Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written."  *Hemric v. Groce*, 609 S.E.2d 276, 282 (N.C. Ct. App. 2005).  Consequently, "[i]f the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract."  *Walton v. City of Raleigh*, 467 S.E.2d 410, 411 (N.C. 1996).

On the other hand, where a contract is ambiguous, its interpretation is a matter for the jury [*i.e.* the factfinder].  *See Glover*, 428 S.E.2d at 209.  Since this case was tried without a jury, the Court, in this instance, serves as the factfinder.  A contract is ambiguous if its language "is fairly and reasonably susceptible to either of the constructions asserted by the parties."  *Id.*  In other words, an ambiguity is present "when the writing leaves it uncertain as to what the agreement was."  *NovaCare Orthotics & Prosthetics East, Inc. v. Speelman*, 528 S.E.2d 918, 921 (N.C.

Ct. App. 2000) (internal quotations omitted). "The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assocs., Inc.*, 366 S.E.2d 480, 484 (N.C. 1988). But a disagreement between the parties does not definitively answer the question of a contract's ambiguity; the party asserting the ambiguity must present a fair and reasonable alternative interpretation to support its position. *See Glover*, 428 S.E.2d at 209.

"When an ambiguity is present in a written instrument, the court is to construe the ambiguity against the drafter—the party responsible for choosing the questionable language." *NovaCare*, 528 S.E.2d at 921; *see also* *O'Grady v. First Union Nat. Bank*, 250 S.E.2d 587, 597 (N.C. 1978). This canon of construction—*contra proferentem*—applies equally when a disputed contractual provision has been drafted by a party's predecessor in interest. *See United Rentals, Inc. v. Keizer*, 355 F.3d 399, 409 (6th Cir. 2004); *see also* *EMRO Marketing Co. v. Plemmons*, 855 F.2d 528, 530 n.2 (8th Cir. 1988); *R.A. Mackie & Co. v. Petrocorp Inc.*, 329 F. Supp. 2d 477, 502 (S.D.N.Y. 2004).

## C.      Attorney's Fees

An award of attorney's fees must be reasonable.  Where the legal services at issue are billed on an hourly basis, a proper calculation of fees presents the Court with a two-step task: First, the Court must determine the appropriate hourly rate applicable to the legal work performed; and, second, the Court must determine whether the number of hours sought to be compensated have been reasonably billed.  As the Supreme Court has noted, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  The applicant bears the burden of showing that his hourly rate is in line with the prevailing market rate in the relevant legal community.  *Id.*

With respect to the total number of billed hours, an applicant must demonstrate what the Supreme Court has called "billing judgment," which requires

that he not seek recovery for hours that are excessive, redundant, or otherwise unnecessary.  *Id.* at 1301 (citing *Hensley*, 461 U.S. at 437).  Billing judgment mandates that an applicant exclude "those [hours] that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, or experience of counsel*."  *Id.*  District courts have discretion in deciding which hours should be excluded as excessive, redundant, or unnecessary.  *Id.*

To support his claim, an applicant should submit to the Court billing records which reflect how much time was spent on the matter and how that time was allocated.  The general subject matter of the expenditures should also be described.  *Id.* at 1303.  In situations where supporting documentation is lacking or is inadequate, "the district court is not relieved of its obligation to award a reasonable fee."  *Id.*  "The court, either trial or appellate, is itself an expert on the question [of reasonableness] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."  *Id.* (citing *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

III.   **DISCUSSION**

A.  **Contractual Obligation to Indemnify**

The operative language relied upon by JSLA to support its cross-claim is shown below in bold:

> [Denon] agrees to **indemnify** . . . [JSLA] . . . **from and against any** . . . **expense, fee,** . . . or penalty (including reasonable attorney and accountant fees) which may be . . . **imposed** by **any** . . . **person** or persons (including any governmental authority) **resulting from**, or **in connection with,** the operation of the Plan.

ASA § IV, tab 75, Ex. A-1.

Though Denon argues that this language is ambiguous and should therefore be construed against JSLA, the Court disagrees. The language of the ASA's indemnification provision is plain and clear. The parties have presented no evidence to indicate that the words are, or were meant to be, freighted with technical or special significance. Accordingly, they must be interpreted in light of their common, everyday meaning, and the indemnification provision must be enforced as it is written. Doing so, the Court finds that Denon is contractually obligated to reimburse JSLA for its attorney's fees and litigation expenses.

Dictionaries are often used to provide the plain meaning of words. *See Sawyers v. Farm Bureau Ins. Co.*, 612 S.E.2d 184, 188 (N.C. Ct. App. 2005)

("Dictionaries may be used to determine the plain meaning of language."); *see also*

*North Carolina v. Martin*, 173 S.E.2d 47, 48 (N.C. Ct. App. 1970) ("[C]ourts may, and

often do, resort to dictionaries for assistance in determining the common and

ordinary meaning of words and phrases.").   "Indemnify" means "to make

compensation to for incurred hurt or loss or damage." WEBSTER'S THIRD NEW

INTERNATIONAL DICTIONARY 1147 (2002).   Thus, under the ASA, Denon must

reimburse or compensate JSLA for specified losses.  Those losses are plainly set forth

in an enumerated list.  The ASA provides that, among other losses, Denon must

reimburse JSLA for "any . . . expense, [or] fee."  The word "any" appears at the

beginning of the list and modifies those terms which immediately follow.  "Any" is

an all-inclusive adjective which, viewed in the context of the indemnification section

as a whole, cannot reasonably be interpreted to limit or restrict the types of fees or

expenses to which indemnification applies.  As a result, the Court finds that

litigation expenses and attorney's fees fit comfortably within the plain meaning of

the phrase "any . . . expense [or] fee."

The ASA makes clear, though, that expenses and fees are properly subject to

indemnification only when they have been: (1) "imposed" (2) by "any . . . person or

persons," and (3) have "result[ed] from" or arisen "in connection with" the

operation of the Plan.  These conditions are satisfied here.

The attorney's fees generated by Hall Booth in this lawsuit (approximately $55,000) were "imposed" upon JSLA under the terms of the ASA.  After Hall Booth's legal fees were paid up front by St. Paul, those fees were then billed by St. Paul to JSL and ultimately to JSLA.  The verb "impose" means "to make . . . or apply (as a charge [or] obligation) as compulsory, obligatory, or enforceable." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1136 (2002).  Because the money St. Paul paid on JSLA's behalf totaled less than the $100,000 insurance-policy deductible, JSLA, as an insured, had an obligation under the policy to reimburse St. Paul for those fees.  JSL and JSLA were jointly and severally liable for any amount up to $100,000.

Once St. Paul became aware of this lawsuit, it assigned Hall Booth to represent JSLA and paid Hall Booth for its legal services.  After paying Hall Booth roughly $55,000 in legal fees and expenses—again, less than JSL's policy deductible—St. Paul then sought reimbursement, as it was contractually entitled to do, from JSL for the full amount.  JSL reimbursed St. Paul and then charged the full amount back to its subsidiary, JSLA—the insured entity ultimately responsible for bearing the attorney's fees at issue.  The fees showed up on JSLA's profit and loss statement as an incurred liability.  Because of the arrangement with St. Paul, the fees and expenses at issue here were "imposed"—a compulsory, enforceable obligation—on JSLA within the meaning of the indemnification agreement.

14

Next, the phrase "any other person or persons" in the indemnification provision is sufficiently broad to encompass a corporate entity like St. Paul. Denon argues that the word "person" should be construed to mean only a human being. It notes that such an interpretation would be consistent with the canon of construction known as *ejusdem generis*; a canon which suggests that general words following a list of specific words should be interpreted in light of the more specific words which precede them. *See **Knight v. Town of Knightdale***, 596 S.E.2d 881, 884 (N.C. Ct. App. 2004). Here, the words "employee" and "dependent" precede the phrase "any other person or persons." Because employees and dependents are human beings, Denon reasons that the words "person" or "persons" should be similarly restricted.

Denon's interpretation, however, runs counter to the plain language of the provision and is unpersuasive given the parenthetical—(including any governmental authority)— which immediately follows, and modifies, the phrase "any other person or persons." That parenthetical indicates that the parties did not intend the word "person" to function solely as a stand-in for human beings. If a governmental authority—a decidedly nonhuman entity—qualifies as a "person" under the ASA, then so too can an insurance carrier such as St. Paul. That the law

15

often treats the word "person" expansively is not unusual.  *See* BLACK'S LAW DICTIONARY 1178 (8th ed. 2004) (defining "person" as "[a]n entity (such as a corporation) that is recognized by law a having the rights and duties of a human being."). Denon argues that the governmental-authority reference is inconsequential insofar as it does not expressly identify corporate entities as also being embraced by the term "person." The Court disagrees. The reference itself is strong evidence that the parties did not mean for the words "person" or "persons" to be narrowly construed.

Finally, there can be little doubt that the fees and expenses generated by Hall Booth in this litigation "result[ed] from" or were incurred "in connection with" JSLA's operation of the Plan. The events which spawned this lawsuit began when JSLA, as third-party administrator of Denon's employee benefits plan, denied a portion of MCCG's claim for medical expenses. That denial was upheld by Denon, the Plan administrator, on review. MCCG thought those decisions were unlawful under ERISA and filed a lawsuit against both Denon and JSLA as a consequence. Thus it was JSLA's interpretation of the Plan that led it to be named as a defendant. The fees and expenses now sought by JSLA were generated in the process of defending against MCCG's claim. On this point, Denon offers no argument to the contrary.

16

### B.     Reasonable Attorney's Fees and Expenses

A review of Hall Booth's invoices shows that St. Paul was billed a total of $55,510.52 in fees and expenses.[3]   Of this, JSLA seeks to recover from Denon $48,491.71—45,888.50 in fees and $2,603.21 in expenses.   JSLA conceded at trial that the only fees and expenses it is seeking are those that were incurred in defending MCCG's ERISA claim.   In support of its request, JSLA introduced into evidence various billing records that it contends demonstrate the reasonableness of its fees and expenses.   As to the fees, the parties stipulated at trial to the reasonableness of two hourly rates[4]—$115 and $155.   So the Court here is concerned only with determining the reasonableness of the number of hours expended by Hall Booth in defending against MCCG.

Denon maintains that, even if indemnification is proper, JSLA has failed to carry its burden of showing that its fee request is reasonable.   Thus, Denon would

---

[3] The Court calculated a slightly different figure than that set forth in JSLA's post-trial brief.  JSLA came up with a total of $55,055.82.  The Court will use its own calculations, based on the documents before it,  in assessing the reasonableness of JSLA's fee request.

[4] Two attorneys from Hall Booth represented JSLA in this matter, Mr. Roger Sumrall and Mr. Russell Owens.  Regarding Mr. Sumrall, a partner at the firm, the parties stipulated to the reasonableness of his $155/hour rate.  Regarding Mr. Owens, an associate at the firm who did the lion's share of work in this case, the parties stipulated to the reasonableness of his $115/hour rate.

have the Court deny JSLA an award of fees and expenses altogether.  That wish cannot be accommodated, however, as the Court is under an independent duty, using its own knowledge and experience as a guide, to evaluate a party's request for attorney's fees and, when appropriate, to award a reasonable amount.  *See Norman*, 836 F.2d at 1303.

Though JSLA's post-trial brief states the total amount of fees requested, it does not provide a figure reflecting the total number of hours expended.  But JSLA has submitted a stack of monthly invoices providing itemized entries that describe the legal tasks accomplished, the amount of time spent on each task, and the applicable billing rate.  Each invoice lists the total number of hours worked for that particular billing cycle.  The Court has combed through these invoices and, keeping in mind its obligation to cut "excessive, redundant, or otherwise unnecessary" hours, determines that the total number of hours reasonably expended is 387.6—380.2 billed at the $115/hour rate[5] and 7.4 billed at the $155/hour rate.  The expense disbursements have also been evaluated, and the Court finds that the amount of expenses reasonably billed totals $2,436.57.  Addressing fees and expenses separately, the Court explains below how it arrived at these figures.

---

[5] Some of these hours were billed at $110/hour.  During the course of this litigation, Mr. Owens's hourly rate increased from $110/hour to $115/hour.  That rate will not be disturbed, however, since it is lower than the rate stipulated to by the parties as being reasonable.

### 1.    Fees

The fees reflected on Hall Booth's invoices total $52,803.20.  This amount represents a total of 454.7 hours worth of work.  Of these hours, 7.4 were billed by Mr. Sumrall at a rate of $155/hour and 446.2 were billed by Mr. Owens at rates of either $110/hour or $115/hour.  Only a portion of the remaining 1.1 hours can be accounted for on JSLA's invoices.  Because the Court cannot verify how the remainder of this time was spent, the whole 1.1 hours will be deducted at a rate of $115/hour—reducing the total number of hours to 453.6 and thereby lowering the total fee to $52,676.70.  The Court now addresses whether 453.6 is a reasonable number of hours to have spent defending MCCG's lawsuit.

The Court can find no redundant hours to deduct.  *See **Norman***, 836 F.2d at 1301-02 ("Redundant hours generally occur where more than one attorney represents a client.").  Though both Mr. Sumrall and Mr. Owens performed legal work in representing JSLA, neither did the same work and each made a distinct contribution to the case.  Therefore, their work was not redundant and is not subject to reduction on that ground.

Moreover, none of the work done by Mr. Sumrall appears to have been excessive or otherwise unnecessary.  As the partner overseeing this case, Mr.

Sumrall reviewed the case file when it was received from St. Paul; met with JSLA representatives to discuss the case; drafted the answer to MCCG's complaint; and reviewed the proposed scheduling order.  His 7.4 hours of work are reasonable, as is the $1,147.00 he billed for those hours.

With respect to the 446.2 hours billed by Mr. Owens, a reduction is in order. Specifically, the Court has culled from the invoices 66 hours that either were not related to the defense of MCCG's claim or were otherwise unnecessarily expended in mounting that defense—a reduction valued at $7,573.50.  As a result of this reduction, the Court finds that only 380.2 hours were reasonably spent by Mr. Owens in defending MCCG's claim; and the reasonable fee for those hours, as measured by the parties' stipulated hourly rate,  is $43,956.20.

Many of these 66 hours were spent working on matters related to JSLA's indemnification cross-claim against Denon.  JSLA stipulated at trial that it was not seeking reimbursement for any fees related to that claim.  Thus, all entries for work bearing on the issue of indemnification have been deducted.

The Court determines that the remainder of these hours were "otherwise unnecessary," as they were spent researching issues not implicated by MCCG's ERISA claim.  *See **Norman***, 836 F.2d at 1301.  For instance, there are a number of

entries indicating legal research on tort-related issues such as assumption of the risk, contributory negligence, and failure to warn.  These entries appear to have been erroneously billed and are subject to deletion on that ground alone.  In addition, there are entries describing legal research done on MCCG's state-law claims and on the issue of ERISA preemption.  But a review of the complaint reveals that MCCG did not allege any state-law claims against JSLA.  Accordingly, those hours spent researching state-law issues and ERISA preemption were unnecessary to the defense of MCCG's claim.  The Court, therefore, exercises its discretion by deducting these hours, as they are not in accord with sound billing judgment.  *See **Hensley***, 461 U.S. at 437.

Adding together the reasonable fees attributable to Mr. Owens and Mr. Sumrall yields a total of $45,103.20.

## 2.    Expenses

As to the $2,707.32 in litigation expenses billed by Hall Booth, the Court has reviewed each disbursement and finds that some entries should be deducted. Namely, the Court has deducted seven entries for meal/travel expenditures that are either duplicative or do not relate to this case.  Those erroneous entries total $270.75. Reducing the total expenses by this amount, and finding no problem with the

remaining expenses, the Court concludes that the firm reasonably incurred a total of $2,436.57 in expenses.

## IV.    CONCLUSION

The language used in the ASA's indemnification section is not ambiguous because it is not fairly or reasonably susceptible to competing interpretations.  The Court, giving effect to the ASA, as written, concludes that Denon is obligated to indemnify JSLA for its reasonable attorney's fees and expenses in an amount of $47,539.77.

SO ORDERED, this 11th day of July, 2005.


**/s/ Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/sew

22